The United States Court of Appeals for the Ninth Circuit is now in session. Good morning, everyone. The cases will be called in the order listed on the docket. The first four cases are Alfredo Lopez v. Garland, Perez Magana v. Garland, Teran v. Garland, and Moreno Bueno v. Garland have been submitted on the briefs. The first and only case on calendar for argument today is Rosales v. Najera. Counsel for appellate, would you please proceed? Good morning, your honors, and may it please the court. I am Ashlyn Sainz-Ochoa here on behalf of my client, Mr. Gary Rosales. I would like to reserve three minutes for rebuttal and I will do my best to watch my own time. Thank you, counsel. Mr. Rosales received ineffective assistance of counsel based on his trial attorney's failure to challenge the illegal entry into the apartment. This was a winning and obvious claim. Police, without a warrant or any reasonable legal justification, entered their apartment while the mother was sleeping to force an interaction with the mother. Police then searched the apartment and recovered a gun. Police used... Can I ask you a question right off the bat because to me it's really important. Taking all that you say at face value, I need to know right away, are we reviewing this case under the more restrictive standard of AEDPA or do we review it de novo because the trial court inappropriately applied or misapplied federal law? I believe your honors can do it either way. Under AEDPA, either under D-1 or D-2, they were contrary to federal law and so you can review it de novo. Additionally, I believe that they applied unreasonable facts. They created an order that said that counsel did not brief the issue in which she fully did and so under D-2, it can also be reviewed de novo. It sounds to me like you're saying AEDPA doesn't apply, we're reviewing it de novo because of D-1 and D-2. Is that correct? That is correct, your honor. Thank you. Let me ask this follow-up question. In this case, is there a difference between whether the state made a, I'll call it a legal mistake or that doesn't matter because their determination was reasonable? I think what you're asking me, your honor, is does it matter whether or not it's based on a legal... Hold on just one second. I want to be sure our technical people are aware. The clock seems to be frozen at 13 minutes. I don't know whether that's just inadvertent and they have a different clock, but mine's showing steady at 13 minutes. Thank you. Mine too. Thank you, Mike, for putting that out. I can see that, Judge. I'll let Kelly know. Please. Yeah, I don't know what the correct timing is. I would guess we're down about 11 minutes now, but I don't know. Proceed, counsel. We'll work out the clock situation. Okay. Judge Tsushima, could you repeat the question again for me, please, your honor? I'll assume... Judge Tsushima? Oh. Judge Tsushima? Yeah. She asked you to repeat your question. Oh, I can hear you. I didn't hear the... Counsel, is there a difference in this case, you know, between the... What shall I say? Whether or not the state misconstrued a federal law or that doesn't matter because whether they did or not, what they did was reasonable. I think... I think you're talking about the attenuation, right? So practically speaking, there is no difference because whether or not you view it that they applied the facts unreasonably or that they either, you know, were contrary to federal law, we get to the same place. They were unreasonable. They made a factual determination that counsel had not briefed the issue of attenuation when, in fact, she did. In her opening brief, 792 ER 792, she cites to Schneckloth and Costello, which both have to do with consent. They have to do with illegal entries. They have to do with, you know, dissipating the taint, fruit of the poisonous tree. These are all concepts that really mean the same thing. She may not have used the word attenuation, but the argument and the claim was presented there. She says, quote, the consent did not cure the illegal entry and make the search legal. And then in the reply at ER 729, she repeats and restates the test for attenuation in Brown. Quote, respondent argues that if the entry was illegal, it is still possible to save the search. If there was sufficient time between the entry and the consent, whether Miranda warnings were given, the presence of intervening circumstances and the flagrancy of the misconduct. And throughout her briefing, she presents sufficient facts for the court to make that determination and to do the analysis. And so they made a factual, you know, representation that she didn't brief it. And in fact, she did. But they also were contrary to federal law because they did not thoroughly, you know, apply Strickland. This was an IAC claim to begin with, based on the issue of illegal entry, not consent. And additionally, they don't apply their own, the federal case they cite. They don't apply Wong-Sun and they definitely don't apply Brown v. Illinois, which is the actual test for attenuation. And so I think either way, whether it's an unreasonable application of the facts or whether or not they were contrary and just completely disregarded federal law, you get to the same place. They were unreasonable and their decision should not be, you know, owed deference. Counsel, I, as I read this record, it seems to me that the trial court placed the attenuation burden on your client instead of the state. Is that your understanding as well? Yeah, that's my more practical argument, is that, you know, I don't think even in post-conviction when no one and no one is expecting me to make my co-counsel's argument for them. And so, you know, she, she, she briefed that there was, you know, she established that there was an illegal entry. And she established that her argument was that the illegal entry did not dissipate the consent. That is her argument. And that is what any argument would be. The government then responded with that there was an attenuation exception here. They, you know, cited to the case law. She responded directly and refuted directly their arguments. She refuted their, you know, their arguments towards the purpose and flagrancy of the police conduct. And she also mentioned, hey, look, the government has waived the time issue. And so she directly refutes the government's argument. And so there was a full and cogent briefing on both sides here. So there's no excuse for the Nevada Supreme Court to have ignored and disregarded this federal, you know, this valid federal constitutional claim. Counsel, even if we agree with all of that, what's your response to the prejudice prong of ineffective assistance of counsel? How would the outcome have likely been changed if the consent is invalidated? I mean, the entire landscape of trial would have been different. You know, the gun and the confession were integral to the trial. The state mentions the gun and the confession multiple times opening. They mention it in closing. There was a firearms expert that testified. And let's just, you know, I'll explain it head on. My client testified for himself, and he testified about this Eric Klein. But we have to remember, if you look at his testimony, his testimony, and he testified to explain and to present to the jury why he had possession of the gun. That testimony is to explain the relationship of him selling the gun to Eric Klein and back and forth. And so without the gun, there would have been no need to explain that relationship, and likely he would not have testified at trial. I'm sorry, counsel. Is it your argument that but for the discovery of the gun, he would have never confessed? That as well. The gun is exactly why he confessed. There's no dispute that the interview window as soon as they returned, they showed him the gun. He changed his story. I mean, his he vehemently denied everything in the first interview. He denied it about 19 to 20 times. I think I counted. He was he denied when they show him the gun. He then confesses. Multiple police officers say this is exactly why he confessed in the state's opening. That's the exact reason they use that against my client. And so without the gun, there would have been no confession. It is a direct fruit of the poisonous tree from there. One of the things that I noticed is that the cell phone evidence, although it's strong regarding the threatening calls that link your client only with those made between December 10 and December 13 in 2004. But the charges against him go back six years. So there is prejudice in that regard. Is not based upon the illegal entry. So the I mean, the charges that are linked to the gun directly linked to the gun are eight out of the 10 charges. And so there is a heavy prejudice there. He's also serving the most amount of time because of the gun and the charges that are linked to the gun. He's serving 62 years for the firearm charges. And so you're correct, Your Honor. There is absolute prejudice with the charges. The phone, although it is another physical type evidence, it really only linked to the stalking charge, which was, you know, the phone calls to the DA. And so, you know, the gun and the confession are the meat and potatoes of the state's case here. And if they were suppressed, as they should have done, it would have changed the entire defense strategy. The state's prosecution would have had to adjust. And it would have, there is a reasonable probability that the outcome definitely would have been different. What would the defense strategy have been without the gun? I can tell you what my defense strategy would have been without the gun. You said the defense strategy would have changed. So you made that statement. So I'm asking you, how would the defense strategy have changed? I think a competent attorney would not have put their client on the stand. I think they would have had to make the state prove that the phone and the unreliable writings and the unreliable voice recordings could be sufficient for firearm-related charges. The gun linked to, was linked to the casings. And so without the gun, there would be these casings that have no markings. And so, you know, there would be very weak evidence and, you know, the state would have had to work to really prove their case, especially with those eight out of 10 firearm charges. Counsel, am I correct in my recollection that the police were seeking a warrant before they were told that there was consent to enter the apartment? You know, they allude that they were in the process of thinking about getting one. This was never mentioned at all during the grand jury. It wasn't mentioned during the suppression hearing. It was only mentioned during trial. And they said that they were in the process of writing an affidavit. But unfortunately, that's not a warrant. Good intentions don't really matter. What matters is that they follow through and following the law. And if they were thinking about getting a warrant, then they should have gotten one before they went to that apartment. And I think I will save the rest of my time for rebuttal. All right. Thank you, Counsel. We'll hear from the state. Good morning, Your Honor. May it please the Court. Matthew Johnson, Senior Deputy Attorney General for the State of Nevada, representing the respondents in this matter. Your Honor, this is an epic case. And Rosales fails to demonstrate that the Nevada Supreme Court unreasonably applied any clearly established federal law. Furthermore, Rosales failed to even make an attenuation argument before the Nevada Supreme Court and therefore failed to meet his burden under Strickland. Just a minute. You say that argument was waived? No, Your Honor. And I apologize if I'm... Can everyone hear me? I'll try to speak up a little bit. Could you speak a little more slowly, too? Yes. Yes, I can, Your Honor. So as I was saying, Mr. Rosales failed to establish that the Nevada Supreme Court misapplied any clearly established law. And Rosales failed to make any attenuation argument before the Nevada Supreme Court and therefore failed to meet his burden under Strickland. Strickland's very clear that the burden is on the petitioner to prove that trial counsel was ineffective. And Kimmelman v. Morris is very clear that part of that burden is demonstrating that the motion to press would have succeeded. But counsel, it's very clear that the attenuation argument, the burden is on the state, not on the defendant. At the trial, Your Honor, if this was, I agree, if this was a Fourth Amendment claim, a straight Fourth Amendment direct appeal claim, that's correct. This is a Strickland claim. The burden under Strickland and every Strickland case by the United States Supreme Court all clearly explains that the burden is on the petitioner. Because this is an IEC claim, it was his burden to make the attenuation argument and demonstrate attenuation in his argument before the Nevada Supreme Court. So this idea that it was someone else's burden is just not supported by any law. Just a minute. Why is it his burden to demonstrate that when the burden to prove attenuation is on the state? Because, Your Honor, this is an IEC claim. It's not a Fourth Amendment claim. And Strickland specifically says that it's their burden to demonstrate that counsel fell below an objective standard of reasonableness. It's their burden to demonstrate that the result of the proceedings would have been different. And Kimmelman v. Morris adds an additional factor. Kimmelman v. Morris says it's their burden to demonstrate that a motion to suppress would have succeeded. All of those are their burden. Therefore, when he is appealing the district court's denial of this IEC claim, it's his burden before the Nevada Supreme Court to demonstrate that this motion to suppress would succeed. Part of that burden is to demonstrate attenuation. And he simply failed to meet that burden. Let me ask you this. I want to go back to the Fourth Amendment issue. You know, as I read the record in this, and I see here the police, three big policemen outside the door. They knock on the door, wait for a maximum of 90 seconds, walk in. This woman is asleep. There's no medical emergency. There's no emergency of any kind. They then immediately, according to her, say, your son's going to go to prison for 120 years. We can do it the easy way or the hard way. I mean, the initial part, counsel confessed in the hearing that he had omitted to make the claim that this was an illegal entry contrary to the Fourth Amendment. So don't we have to start with that to show that an IEC claim would literally have been pretty easy if he had made it or he or she. I forget who it was at that point. Your Honor, you got a couple different parts to that question, and I'll try to take them one at a time if I can. If I don't go the right order, I apologize. If we're talking about trial counsel's evidentiary hearing, I think that the opening brief mischaracterizes what was actually stated. Trial counsel specifically says he has a very vague recollection of any of the facts of this case. It's happened seven years earlier, and then he makes that statement that perhaps I missed the issue. The context is that he doesn't remember what went on at all. Sorry, Your Honor, I didn't mean to interrupt. He said he may have missed the issue, and that's at 14 ER 2897. And the reality is that given the circumstances here, isn't that almost a prima facie satisfaction of the first wrong of Strickland? No, Your Honor, I think it's very clear in Kimmelman v. Morris. They state that just saying that a motion to suppress would have been successful is not enough to show ineffective assistance of counsel of a Fourth Amendment claim. How do we review this, counsel? We're an appellate body. We're not fact finders. But looking at these facts, a woman, an elderly woman asleep, nothing wrong to me. This is just a prima facie violation of the Fourth Amendment. So what do we do that? Do we have to send it back to the trial court? Do we make the determination? How do we analyze whether the first prong of Strickland has been violated? And if so, how does that affect our reasoning in this case? Yes, Your Honor, what you'd have to do is because this is an epic case, you'd have to ask whether any fair minded jurists, even if you say that even if you determined that the entry was illegal, could have found attenuation in this case. Let's talk about attenuation. There are three or four prongs that you have to show. In my mind, it's your burden, as Judge Tashima also said. I don't see how you satisfy any of the grounds for attenuation. Convince me I'm wrong. Yes, Your Honor. I think there's a couple different cases here. You can look at Utah v. Strife, for example, where the court says, even where the temporal proximity favors the petition, there's a short amount of time. The fact that in that case, it was a valid warrant that favored the state, and then the purpose and flagrancy of the official misconduct. Starting with the valid warrant, in this case, there was valid consent. There's already been an attenuation. That's the whole idea. If we don't see there being a valid consent because of the intimidation, waking this woman up, an elderly, I don't think she necessarily spoke English all that well. Bottom line is, arguably, at the very least, she was intimidated. The validity of the consent is clearly at issue. Your Honor, that's not the claim made that's before this court, nor the claim made by the petitioner in the opening brief. The claim and the determination has already been made, which this court has to give deference to, that the consent was valid. That's already been made. It's already been adjudicated. It was adjudicated all the way through the court system, and it's not one of the claims that was granted COA. If you did not comply properly, the lower court did not comply with federal law, and we find that de novo review applies here rather than EDPA in connection with the attenuation issue, isn't this an open issue, not an open and shut issue, as you seem to be presenting it? I guess there's two different questions here, Your Honor. In terms of attenuation, how the courts have evaluated attenuation is whether the causal connection between the illegal entry, the alleged illegal entry, and the valid consent, whether, or actually the discovery of the evidence, is sufficiently attenuated. They evaluate those three factors, the proximity, the purpose and flagrancy. I think the biggest one here, Your Honor, is the purpose and flagrancy. This wasn't a case where they were trying to break down the doors, they were trying to violate her rights. Whether or not they made a poor decision about pushing open that door, I want to at least remind the court of the facts here. First, they called out from behind the door repeatedly and loudly announcing themselves, and they were concerned. This was an elderly woman who they were told did not get around very well, relied on someone else for her care. Who did they know that from? They knew it both from the defendant and from the people, the management company downstairs, who told them this information before they went up, and also told them they believed she was there. So they thought someone was home, the lights were off, she didn't get around very well, and even when they pushed open the door, Your Honor, they continued to call from the threshold, and there was no response. Loudly, and they were concerned for a welfare. Then they flipped on the light before they entered the apartment, and continued to call loudly, and saw a woman, unresponsive, on a mattress, with nothing else, surrounded by boxes, and that's when they entered the apartment. This wasn't purposeful or flagrant activity, they were concerned that she might be dead. Wait, you're saying they did not enter the apartment until after they turned on the lights? That's correct. Of her lying there? How did they turn on the lights if they had not entered the apartment? Let me rephrase, Your Honor, they didn't step across the threshold until they flipped the light on, so I don't know the exact sequence of events. They reached around the corner and turned on the light? Yes, that's how I read the record. So this isn't someone who is just trying to rush in, they were really concerned for her welfare. The characterization in the opening brief is not supported by the record about they had some sort of evil design to come in and break into this woman's apartment, and coerce her into consenting. That's not what the record reflects, and the important thing is there was also intervening circumstances, including her valid consent, which the courts have already litigated, that they explained the consent form to her, they first allowed her to go to the bathroom to change clothes, they told her she didn't have to consent, they explained the circumstances of why they were there. All of these... You say they told her she didn't have to consent? Excuse me, Your Honor, I didn't hear you. You say they told her she didn't have to consent? Yes, the record specifically discussed that they told her she didn't have to consent. What the record shows, it seems to me, is they conveyed that impression in a very coercive way, didn't they? No, Your Honor, I don't think that's what the record reflects. And there's also two different testimonies, one from the police officer and one from Mr. Rosales' mother. But again, this is under AEDPA, this is whether any reasonable jurist could find attenuation under circumstances of this case, even if reasonable minds might differ about whether to believe one versus the other. You're speaking in generalities, but if you get down to the facts, what they said was, we can do it the easy way or we can do it the hard way, right? That's not what's reflected by the police officers. Didn't the record show that? That's what Ms. Rosales says, but the police officers did not say they said that. They said they explained to her that she didn't have to go through the consent form. They talked to her for 10 to 15 minutes about why they were there. There's a lot of evidence in the record that a reasonable jurist, the Nevada Supreme Court, could determine that there was sufficient attenuation under these circumstances. And that's why I think it's important that this isn't a de novo case. The court first has to find that the Nevada Supreme Court unreasonably applied clearly established federal law, and they haven't pointed to any clearly established federal law that was unreasonably applied under the circumstances of this case. And I think that's the problem here. Yes, perhaps another jurist, if this was de novo, could make that determination, but we're under an AEDPA standard here, and it's also an IEC plan. Do you agree that if the three prongs for attenuation, if the standard was that it's your burden and that you didn't meet any of them, arguendo, don't you agree that the standard for review would not be AEDPA but de novo review with regard to the attenuation matter? No, Your Honor, because this is still an appeal. So they're appealing the state district court's determination. As this court reviews all the time, the person appealing still has to prove their case. They still have to prove that the district court was incorrect. And in this case, they didn't do anything with attenuation. The court still made an attenuation determination when they found that they failed to demonstrate deficiency or prejudice. They just said, you haven't proved your case. But again, we get back to the same issue that both Judge Tsushima and I have raised, which is the burden in attenuation is on the state, not on the appellant in this case. So if that's correct, isn't that a problem for you regarding attenuation? No, Your Honor, because the claim that this court's reviewing is a strickling claim. And the Nevada Supreme Court's order said they failed to demonstrate both deficiency and prejudice. I see I have two minutes left. I'd like to go to prejudice if I can, Your Honor. And I don't mean to cut you off your question at all. I do want to point out the evidence that was there. You mentioned the phone call. During the phone calls where they could trace it back to the phone of Mr. Rosales, he admitted to the five to seven shootings. He admitted that he did the Keatsky Plaza shooting where the one woman was shot. He admitted that he was involved in that shooting. In addition, they traced back his handwriting to a letter where he confessed to the Keatsky Plaza shooting and discussed the type of weapon he used. So both the handwriting, what was led back to the defendant, they matched up his handwriting to the letters where he confessed and some of the graffiti, but not all of the graffiti. There was hundreds of graffitis threatening police, threatening to rape their children and all the other awful things that were going on in this case. But they also traced back the phone to the calls where the DA Gamak specifically testified that Mr. Rosales on the phone, he didn't say Mr. Rosales, but the caller said that he did the Keatsky Plaza shooting and that he shot into those five or seven, I forgot the number, your honor, so I apologize, five or seven other homes. So there was other strong evidence that a reasonable jurist at the Nevada Supreme Court, even if they didn't find, even if they found the motion to suppress would have succeeded, a reasonable jurist, the Nevada Supreme Court could have found that there was no demonstration of prejudice. And the petitioner has to show an unreasonable application of both the deficiency prong and the prejudice prong in order to succeed. And so I think even then, the prejudice was sufficient, your honor. But I do think it's important. This is a Strickland case. And the law is very, very clear. There's no case that says under Strickland, the burden is on the prosecution or the state to prove that case. Thank you, your honor. Thank you, counsel rebuttal. Counsel, may I just ask you before you start, you're not contending that the consent was involuntary, are you? You're muted. Pardon me. I think that the courts don't have to touch the consent issue. There was a Ninth Circuit case that this court decided, U.S. v. Washington, in which the consent, the test for the validity of consent and attenuation overlap, but they are not the same. And so I think the consent issue can be left alone. But I do think that if your honors find under de novo review that the consent wasn't valid, that is definitely in your purview. But I believe that this court does not have to touch the issue of consent to find that it didn't purge the taint of the illegal entry. Okay, but I'm asking you, did you make the argument that the consent was not voluntary? I didn't see that you made that argument. No, that argument was not made. I left the issue of consent alone because regardless, this court does not have to touch it to find that counsel was deficient for failing to file the motion to suppress based on the illegal entry. I would like to say this court has recently in Chong v. U.S. stated that a very obvious Fourth Amendment violation is deficient performance. I this is like the perfect issue spotter for a 1L, first criminal law class. I mean, it's very obvious here that there was an illegal violation and that counsel was deficient for not, you know, putting it forward. And additionally, he stated that he may have missed it. And I think this is a worthy and winning claim. And as such, it is entitled to fulsome review by this court because Nevada Supreme Court disregarded it. Thank you. Well, yeah, but I'm still thinking about the prejudice prong of it. That's a little bit difficult for me. That the outcome would have likely been different. I don't know. Would you like me to answer that? I'm struggling with that. I'm struggling with that. I think any attorney, defense attorney's worst case scenario is if, you know, your client has a direct piece of evidence like a gun and a confession. And in this case, they had both. And if trial counsel would have suppressed, had filed to suppress both of them and they would have been suppressed, he wouldn't have had either of those issues. And so he wouldn't have had to be confronted with a defense of how does he have this gun. The state also mentions multiple times, you know, we never fingerprinted the gun. It was Gary's. This is his gun. So I think the gun is just integral. But if the gun were out as evidence, are you saying that there would not have been enough evidence to convict him if the gun and the confession were out? Is that your argument? I think my argument is that there's a reasonable probability that there would be a different outcome, at least on the eight out of 10 charges. All right. Thank you. Any other questions? I guess I would just like to follow up very briefly with defense counsel. So the fact, I gather you're saying that on eight of the 10 charges that were convicted, there would have been a different result, but for the violation, the entry violation. But you seem to confess that there would have been likely a conviction on two. Is that correct? I'm not willing to concede that because the, you know, handwriting, unreliable handwriting analysis is, you know, known. Forensics are not always clear on connecting the two. The phone recordings were spotty. I mean, anybody can call in and claim that they're doing something. And, you know, I do think that that would have been a very hard case for the state to make. And, but I do know for a fact that eight of those 10 charges would not have been found if the gun and the confession. Additionally, though, the confession also mentioned... You don't know it for a fact. You don't know it for a fact because we never know what the jury is going to do. So for a fact, you may think there's a good probability, but we don't know that. That's part of the conundrum. Um, I would, you know, offer to this court that I know that there's at least a reasonable probability that the outcome would have been different. That's fair. Any other questions? No. All right. Thank you to both counsel for your helpful arguments. The case is argued is submitted for a decision by the court that completes our calendar for today. And we are in recess until 9.30 a.m. tomorrow morning. All rise. This court for this session stands adjourned. Thank you.
judges: TASHIMA, RAWLINSON, SMITH